| | |
|---|---|
| MARY BETH GINALSKI, )<br>      Plaintiff, )<br>      v. )<br>DIOCESE OF GARY, )<br>ANDREAN HIGH SCHOOL, )<br>HARRY J. VANDE VELDE, III, )<br>DR. BARBARA O'BLOCK, )<br>      Defendants. ) | Case No. 2:15-cv-95<br><br>**JURY DEMANDED** |

## COMPLAINT

Plaintiff, Mary Beth Ginalski, by her attorney, complains against defendants Diocese of Gary, Andrean High School, Harry J. Vande Velde, III, and Dr. Barbara O'Block, as follows:

## PARTIES

1. Plaintiff, Mary Beth Ginalski is a competent adult who resides in and is a citizen of the State of Indiana.

2. Defendant, Diocese of Gary is a Roman Catholic religious organization with headquarters in Merrillville, Lake County, Indiana.

3. Defendant, Andrean High School is a Roman Catholic educational institution located in Merrillville, Indiana, and operated by the Diocese of Gary.

4. Defendant, Harry J. Vande Velde, III is an individual residing, on information and belief, in Valparaiso, Indiana, and at all times herein employed by the Diocese of Gary and/or Andrean High School as the President of Andrean High School.

5. Defendant, Barbara O'Block, is an individual residing, on information and belier, in Lake County, Indiana, and at all times herein employed by the Diocese of Gary as the

1

Superintendent of Schools for the Diocese.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this matter under 42 U.S.C. §2000e, 28 U.S.C. §1331, 28 U.S.C. §1343, and 29 U.S.C. 2615 and 2617(a)(2).

7. The employment at issue in this matter took place in this State and in this District. Thus, Venue is proper in this District under 28 U.S.C. §1391(b).

## BACKGROUND

8. In early August 2012, the Diocese of Gary and Andrean High School hired plaintiff to be Principal of Andrean High School prior to the 2012-13 school year.

9. Plaintiff served Andrean well for the 2012-13 school year, receiving highly favorable evaluations from defendant O'Block and Andrean's school board. During the 2012-13 school year, plaintiff accomplished many feats at the high school that had been neglected for a very long time, evaluated teachers for the first time in many years, and won respect from the staff, students and school community.

10. In early 2013, the Diocese of Gary began considering in earnest a "President-Principal Model" to govern Andrean and Bishop Noll Institute, another Catholic High School operated within the Diocese of Gary.

11. In considering the President-Principal Model, one of the purposes to enact the model was to better allocate leadership resources so that one individual – the President – could oversee financial concerns such as fundraising and budgeting, while the other individual – the Principal – could concentrate on Andrean High School's daily operation.

12. Ultimately, the Diocese of Gary and/or Andrean organized a "Search Committee", and delegated that committee authority to find suitable individuals who might serve as Andrean's

President, which would include accepting applications, considering resumes, and interviewing viable candidates.

13. According to earlier planning, the school Principal – who would work closely with the chosen President – was to be a member of the interviewing team for applicants. But plaintiff was never included.

14. Defendant Vande Velde was originally a member of the Search Committee to help evaluate candidates for the position of President for Andrean. The committee reviewed applicants and their attendant background experience, interviewed multiple candidates, and considered a woman candidate with excellent credentials as a leading contender.

15. On information and belief, while the woman mentioned in the prior paragraph was under consideration, defendant Vande Velde convinced the remaining committee members that he would be the best candidate for the President position.

16. On information and belief, the Search Committee inadequately and hastily vetted Vande Velde's background to determine whether he possessed sufficient Catholic identity, ability and integrity to serve as Andrean's President. For example, although other candidates presented "portfolios" detailing their background, recommendation letters and other requirements – including the former woman leading candidate – Vande Velde had minimal requirements for the Search Committee's consideration.

17. Further, the Search Committee had set a salary for the President position in the $100,000 range. When the Search Committee ultimately approached Vande Velde about offering him the President position, he informed the committee that he needed a salary commensurate with the position he was leaving – which was in the $130,000 range (making him the highest paid Diocesan employee), and insisted he be paid before the end of the normal initial pay period.

18. The Search Committee – as the Diocese of Gary and Andrean's representative – consciously overlooked their due diligence responsibility in considering Vande Velde and promptly considered his contemplated salary increase primarily because he was a male.

19. Andrean and/or the Diocese of Gary ultimately agreed to Vande Velde's salary increase to $130,000 (or thereabouts), and in September 2013, Andrean and the Diocese of Gary announced him as Andrean's President.

20. Vande Velde began his tenure as Andrean's President on September 30, 2013.

21. From the start of Vande Velde's tenure, it became clear that Andrean and/or the Diocese of Gary did not have clear job descriptions delineated for plaintiff, the Principal, vis-à-vis defendant Vande Velde, the President.

22. Specifically, Vande Velde wished to act as <u>both</u> President and Principal, and consequently, relegate plaintiff – although Andrean's Principal – to a "non-entity."

23. Vande Velde, although hired to serve as Andrean's President, spent significantly more time on principal duties than that of his role as financial leader. He dealt with sports issues, secretarial issues, guidance counseling issues, and met with teachers on a regular basis. However, neither the Diocese nor Andrean provided plaintiff a clear list of which individual (her or Vande Velde) handled what responsibility. Vande Veldealso appointed himself freshman girls' basketball coach. Further examples of Vande Velde usurping plaintiff's authority, and minimizing her role are as follows:

   a. Just days prior to his official start date, Vande Velde met with the Andrean staff on September 25, 2013. He proclaimed that he was the "King" of Andrean and everything and anything that happened there would go through him.

b. In the week of October 7, 2013, a problem developed with Andrean's girls' volleyball team, which was overseen by a non-teacher, part-time employee coach. The girls' volleyball coach had been abusive to a senior player, and plaintiff and Athletic Director Bill Mueller attempted to address the situation with the coach and player. Plaintiff felt that the coach needed strong "encouragement" to deal with the player fairly, to which the coach resisted. In direct contravention of plaintiff's duties to oversee Andrean's daily operations, Vande Velde injected himself into this situation and sided with the volleyball coach, who then suspended the senior player, who had done nothing wrong.

c. On October 9, 2013 Vande Velde screamed at plaintiff, and told her to "act like a principal, not like a victim."

d. In November 2013, Vande Velde moved plaintiff from her Principal's office, which had its own door to the hallway where anyone had access to the office. Vande Velde forced plaintiff into a smaller, closet-like, office with very little room, where she was isolated and was no longer seen by the parents and students.

e. Through the end of 2013, although Vande Velde rarely met with plaintiff. At those rare meetings, he always mentioned weight issues to her. He seemed to be obsessed about weight and made plaintiff feel uncomfortable about her weight. Vande Velde seemed to favor meeting with the attractive, thin female employees at Andrean, but shunned meetings with plaintiff.

24. In January, plaintiff met with defendant O'Block and another Diocese administrator. At this meeting, plaintiff was visibly upset and she told O'Block that there were a

number of difficulties, including emotional outbursts by Vande Velde toward plaintiff and gender specific discrimination. Upon hearing plaintiff's revelations, O'Block responded by saying "sounds like you're working in a hostile work environment."

25. After the above meeting with O'Block, plaintiff had a meeting in late January with Vande Velde and O'Block after school. The two told plaintiff she would be on an "action plan" – although no specific reason why was given. Plaintiff was stunned at this point because her evaluations had been so glowing up to this point. In fact, under plaintiff's leadership, part of the school had been remodeled, Andrean's Indiana State Department of Education ranking went from a D to an A, and multiple new academic classes were added. Further, plaintiff had evaluated all teachers and Andrean was running smoothly.

26. Vande Velde and O'Block gave plaintiff 22 days to complete the "action plan." Most of the action plan consisted of jobs that were outside of plaintiff's responsibility, like organizing work files, etc. Plaintiff told Vande Velde and O'Block that some of the "action plan" appeared to be secretarial work. Plaintiff further reminded both Vande Velde and O'Block that the school secretaries would be better at those tasks because plaintiff had Attention Deficit Disorder (ADD) and organizing files might not be the job for her.

27. Despite the secretarial/ministerial nature of the "action plan", plaintiff decided to satisfy it and completed all tasks within the stated 22-day time period. Plaintiff wrote out the required responses on paper and gave to Vande Velde, per his directions. Afterward, Vande Velde never met with plaintiff regarding her responses to the "action plan," and offered no substantive feedback to anything she had done.

28. In late February, plaintiff was forced to terminate the employment of a (thin, attractive) female teacher who been squirt-gunning water at her senior male students (mainly

football players), who would then remove their wet shirts in class and expose themselves bare-chested, much to the teacher's delight. This teacher had been a favorite of Vande Velde, and he had mentioned to others that she would make a good principal. He also served as this teacher's mentor for her PHD program, although he has no credentials that allowed him to do that.

29. Although in plaintiff's belief any teacher employment decisions were her responsibility as Principal, she felt uncomfortable in having to terminate the above teacher. Nevertheless, and after Vande Velde stated he would not be involved with the decision – plaintiff terminated the teacher's employment, which plaintiff knew would result in further retaliation by Vande Velde.

30. After not meeting with plaintiff about the "action plan"as described above, on Monday, March 3, 2014 plaintiff was called into Vande Velde's office at 9:00 a.m., whereupon Vande Velde and Dr. O'Block terminated plaintiff's employment. At that meeting, plaintiff noted that she was never given the chance to show the "action plan" work that she had done, the completion and ideas she had generated with the accomplished work. Vande Velde simply stated that plaintiff had "not completed it" – without indicating what plaintiff had not done. Plaintiff had not anticipated that the March 3, 2014 meeting would result in her termination. She thought that meeting would allow her to demonstrate all the work she had done on the action plan, and to further discuss it.

31. At the March 3, 2014 meeting, plaintiff requested that O'Block and Vande Velde allow her to finish the school year. Vande Velde refused that request. Plaintiff was told to vacate her office, and not discuss her employment termination with anyone. Plaintiff further inquired whether she could empty out her office, and Vande Velde indicated that would not be allowed.

Shortly afterward, plaintiff discovered that her access to her school e-mail was denied and she could no longer enter through school doors with her key pass.

32. In the days following plaintiff's termination, defendant O'Block gave plaintiff paperwork pursuant to the Diocese of Gary's Family Medical Leave Policy, and requested that plaintiff complete it – suggesting to her that plaintiff have hip replacement surgery before the school year ended – which would help Defendants support their false announcement to the Andrean community following plaintiff's termination that plaintiff took a voluntary "leave of absence." Plaintiff refused O'Block's request because she did not want to have hip replacement surgery at that time and she never agreed to a "leave of absence."

33. In the last 24 months, the Diocese of Gary has terminated the employment of numerous women over the age of 40 – primarily in school administrative positions – with no rational basis for terminating them. In almost every case involving these terminated women, they were replaced by younger men. These multiple terminations demonstrate a discriminatory pattern and practice against women over the age of 40, including plaintiff herein.

34. In plaintiff's case, after her termination, defendants Diocese of Gary and Andrean High School filled her previous position by hiring two males under the age of 35: 1) a new Principal who was 29 years-old with no teaching experience; and 2) a new Assistant Principal (a newly created position) in, on information and belief, his early 30s. Upon hiring the 29 year-old Principal, defendant Vande Velde re-installed him into the nicer office that Vande Velde had forced plaintiff out of in November 2013.

## GROUNDS FOR RELIEF

35. Plaintiff seeks equitable relief in the form of a declaratory judgment that Defendant, as employer, violated the anti-discrimination laws referenced above. Pursuant to 42 U.S.C. §200e *et seq.*, plaintiff also prays for reasonable attorneys' fees and litigation expenses.

36. From September 30, 2013 to March 3, 2014, defendants subjected plaintiff to age and sex-based discrimination in her employment constituting a hostile work environment.

37. On March 3, 2014, defendants terminated plaintiff's employment, and then prior to the 2014-15 school year, hired two less-qualified males aged 29, and early 30s, respectively, to replace plaintiff.

38. On or about August 22, 2014, plaintiff filed a timely discrimination charge before the United States Equal Employment Opportunity Commission under charge number 470-2014-02752 for employment discrimination due to her age and sex and, and for violations of the Americans with Disabilities Act. Plaintiff received her notice of right to sue on or after December 13, 2014.

39. In late January, February and early March 2014, Defendants retaliated against plaintiff for reporting discrimination by the following actions:

    a. On information and belief, ascribing her a poor job rating without just cause;

    b. Putting her on an pretextual "action plan" without just cause;

    c. Not providing relevant feedback to plaintiff regarding her responses to the pretextual, concocted "action plan."

    d. Terminating her in retaliation for plaintiff apprising herself of her constitutional rights under federal law.

40. Plaintiff is a woman, aged 56 (and then turned 57) during the relevant time periods described herein, and is obese and diagnosed with Attention Deficit Disorder (ADD).

41. The hostile work environment defendant subjected plaintiff to was not inflicted upon any of her fellow male administrators at Andrean High School.

42. The hostile work environment created by defendants rendered plaintiff unable to adequately perform her job due to the additional hardships placed on her.

43. Plaintiff reported the age and sex discrimination and hostile work environment to her supervisor, defendant O'Block, who failed to take any remedial action.

44. Plaintiff reporting the age and sex discrimination and hostile work environment constituted a protected opposition activity. Subsequent to plaintiff's reporting, defendants Vande Velde and O'Block began acting adversely toward her by purportedly giving her negative reviews despite plaintiff never having a negative report before reporting the discrimination, and then defendants Vande Velde and O'Block putting plaintiff on the concocted and pretextual "action plan."

45. In continuing the discrimination and hostile work environment, defendants denied plaintiff her employment by terminating her and then hiring two younger males less qualified than she.

## CAUSES OF ACTION

### Count I – Age and Sex Discrimination (Against All Defendants)

46. Plaintiff was a 57 year-old woman who was meeting all defendants' legitimate employment expectations; despite doing so, plaintiff suffered adverse employment actions. By treating younger male employees more favorably, and exposing her to a hostile work environment, defendants intentionally discriminated against plaintiff because of her age and sex,

violating Title VII, and defendants are thus liable to plaintiff for compensatory and punitive damages, and declaratory relief.

## Count II – Retaliation (Against All Defendants)

47. Plaintiff engaged in statutorily protected activity by witnessing and reporting discriminatory conduct to her supervisor, defendant O'Block – who responded by telling plaintiff that it "sounds like you're working in a hostile work environment." But, in response to plaintiff's report to O'Block, instead of working to end the discriminatory conduct, defendants O'Block and Vande Velde created a non-warranted "action plan" – a concocted ruse that amounts to a pretext – in an attempt to perpetuate the discrimination against plaintiff and improperly justify her termination. Accordingly, defendants unlawfully retaliated against plaintiff for asserting discrimination in her employment, thus violating Title VII and rendering defendants liable for compensatory and punitive damages, and declaratory relief.

## Count III – Violation of Americans With Disabilities Act (Against All Defendants)

48. Plaintiff is diagnosed with Attention Deficit Disorder (ADD), and advised defendants Diocese of Gary, Andrean High School, and O'Block in 2012, and defendant Vande Velde in 2013, of her diagnosis. Plaintiff is also obese. Diabetes and obesity are both protected medical conditions under the American with Disabilities Act.

49. Defendants discriminated against plaintiff due to her ADD and obesity conditions, and failed to provide reasonable accommodations for her.

50. Defendants' discriminatory conduct due to plaintiff's ADD and obesity conditions constitute a violation of the American with Disabilities Act, and renders defendant liable for compensatory and liquidated damages, and declaratory relief.

**Count IV – Negligent Hiring (Against Defendants Diocese of Gary, Andrean High School, and O'Block)**

51. Prior to Vande Velde's hiring as President in 2013, due to her position as existing Principal at Andrean High School, defendants Diocese of Gary, Andrean High School and O'Block owed plaintiff a duty to provide her professional support, supervision and interaction with her colleagues, and freedom from a discriminatory and hostile work environment.

52. By hiring Vande Velde in September 2013, defendants Andrean High School, Diocese of Gary and O'Block breached their duty to plaintiff by one or more of the following:

   a. Allowed Vande Velde to promote himself from the "Search Committee" to the leading candidate for the President position without proper protocol;

   b. Failed to adequately vet Vande Velde's professional and personal/religious background to determine if he had the background and credentials to serve as Andrean's President;

   c. Failed to require Vande Velde to undergo the same background review required of other candidates for the President position;

   d. Offered Vande Velde more money than what the President position was supposed to pay – and paid him earlier than the standard pay period – which only emboldened him once he began as President to operate with unfettered discretion;

   e. Failed to delineate Vande Velde's job responsibilities, so that once he began as President, he could do whatever he wanted, including engage in discriminatory and otherwise unlawful conduct; and

   f. Once they learned of it, failed to curtail Vande Velde's discriminatory actions toward plaintiff, but instead allowed him, with O'Block's apparent blessing, to create a phantom "action plan" as a pretext to wrongfully terminating plaintiff.

53. Defendants' breach of the duty owed plaintiff as described above proximately caused her injuries and damages.

**Count V – Negligent Infliction of Emotional Distress (Against All Defendants)**

54. At all times described above, defendants owed plaintiff a duty of reasonable care to refrain from improper actions detrimental to her, especially considering her known ADD and obesity conditions.

55. Defendants breached their duty to plaintiff by one or more of the following negligent acts, all which were reasonably foreseeable to cause her mental, emotional and psychological harm:

   a. Fostered a hostile working environment;

   b. Subjected her to extreme and outrageous conduct;

   c. Subjected her to discriminatory acts;

   d. Retaliated against plaintiff after she availed herself of her protected rights; and

   e. Other negligent acts.

56. As a result of the actions stated above, defendants have proximately caused personal and emotional injury and damages to plaintiff.

**Count VI – Defamation (Against Defendants Diocese of Gary, Andrean High School and Vande Velde)**

57. On information and belief, on multiple occasions after he became Andrean's President, defendant Vande Velde made untrue statements to defendant O'Block, and individuals in the Andrean community about plaintiff's professional capabilities, job performance and competence.

58. Defendant Vande Velde made statements about plaintiff's professional capabilities, job performance and competence knowing, or he should have known, that those statements were false, or alternatively, not knowing definitely whether those statements were true.

59. Vande Velde's statements referenced in the preceding paragraphs constitute *defamation per se*, and damages to plaintiff's personal reputation are presumed.

60. Vande Velde further made those statements to defendant O'Block and others in the Andrean community to further his intended discriminatory conduct toward plaintiff, justify the pretextual "action plan" concocted to justify – in Vande Velde's mind – plaintiff's employment termination, and to resist any community support that may have developed in plaintiff's favor related to her unjustified termination.

61. Vande Velde made the defamatory statements described above:

    a. in his capacity as Andrean President, or, alternatively;

    b. clearly outside the scope of his employment, with malicious, harmful and/or willful and wanton intent, and proximately caused injuries and resulting damages to plaintiff.

**Count VII – Intentional Infliction of Emotional Distress (Against Defendants)**

62. Vande Velde and O'Block's actions described above constitute extreme and outrageous behavior.

63. Vande Velde and O'Block's extreme and outrageous behavior described above was done in their capacity as Diocese of Gary and/or Andrean representatives/agents.

64. Alternatively, Vande Velde and O'Block's extreme and outrageous behavior was clearly outside the scope of their employment, with malicious, harmful and/or willful and wanton intent, and proximately caused injuries and resulting damages to plaintiff.

65. As a proximate result of the unlawful extreme and outrageous behavior described above, the Diocese of Gary, Andrean High School, Vande Velde and O'Block proximately caused injuries and resulting damages to plaintiff.

**Prayer for Relief**

WHEREFORE, plaintiff, Mary Beth Ginalski, prays for judgment in this cause and the following relief:

a. A declaratory judgment that defendants discriminated against plaintiff, Mary Beth Ginalski on account of her age, sex and disabilities in the terms and conditions of her employment;

b. Preliminary and permanent injunctions requiring defendants the Diocese of Gary and/or Andrean High School to pay all sums of back pay necessary to redress its wrongful discriminatory actions toward plaintiff, Mary Beth Ginalski, including her unwarranted employment termination;

c. Award compensatory damages for economic losses caused by defendants' discriminatory actions described in this Complaint and for pain, suffering, mental anguish and humiliation;

d. Award punitive damages against defendants to deter future age, sex and disability discrimination;

e. Award liquidated damages under 29 U.S.C.A. §2617;

f. Award reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. §2000e-5(k), 28 U.S.C. §1998 and 20 U.S.C. §216(b), and 29 U.S.C.A. 2617(a)(3), and the applicable provisions of the Americans with Disabilities Act; and

g. All other appropriate relief.

MARY BETH GINALSKI

_By: William J. Obermeyer_
By: William J. Obermeyer
Attorney at Law, Her Attorney

#31447-49
813 E. Jefferson St.
Valparaiso, IN 46383
219.455.1615
obermeyerlaw@gmail.com

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY OF ALL TRIABLE ISSUES**

MARY BETH GINALSKI

_By: William J. Obermeyer_
By: William J. Obermeyer
Attorney At Law, Her Attorney

#31447-49
813 E. Jefferson St.
Valparaiso, IN 46383
219.455.1615 (phone)
obermeyerlaw@gmail.com
Attorney for Plaintiff