**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| MARY BETH GINALSKI, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:15-CV-95-PRC |
| | ) | |
| DIOCESE OF GARY, ANDREAN HIGH | ) | |
| SCHOOL, HARRY J. VANDE VELDE, III, | ) | |
| and DR. BARBARA O'BLOCK, | ) | |
|     Defendants. | ) | |
| | ) | |
| | ) | |
| ROMAN CATHOLIC DIOCESE OF GARY, | ) | |
| INDIANA and ANDREAN HIGH SCHOOL, | ) | |
|     Counter Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARY BETH GINALSKI, | ) | |
|     Counterclaim Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on (1) Defendants' Motion for Summary Judgment [DE 25], filed by Defendants Diocese of Gary, Andrean High School, Harry J. Vande Velde, III, and Dr. Barbara O'Block on August 1, 2016, and (2) a Motion for Summary Judgment [DE 27], filed by Counterclaim Defendant Mary Beth Ginalski on August 1, 2016.

Plaintiff Mary Beth Ginalski was the principal at Andrean High School, a Catholic high school, for the 2012-2013 and 2013-2014 school years with a one-year contract each year. During the 2013-2014 school year, the Diocese of Gary adopted a principal-president model of governance at Andrean High School and, in late September 2013, hired Defendant Harry J. Vande Velde, III in the position of president. In March 2014, Ginalski was notified that her contract would not be renewed for the 2014-2015 school year. She was told that she would not finish the school year as

principal and was asked to vacate her office; however, she was paid through the end of her 2013-2014 contract.

Ginalski brings federal claims of employment discrimination based on sex, age, and disability as well as various state law claims. The Court finds that, as a matter of law, Ginalski's position as principal at Andrean High School falls within the First Amendment's ministerial exception. Thus, her federal employment discrimination claims fail, and the Court grants summary judgment in favor of Defendants on those claims. The Court grants summary judgment in favor of Defendants on the claims of negligent infliction of emotional distress and defamation, which Ginalski abandons, and the Court relinquishes its jurisdiction over the remaining state law claims of negligent hiring and intentional infliction of emotional distress, dismissing them without prejudice. The Court also grants summary judgment in favor of Ginalski on the Counterclaim because the Roman Catholic Diocese of Gary, Indiana and Andrean High School abandon the two claims therein.

## PROCEDURAL BACKGROUND

On March 12, 2015, Plaintiff Mary Beth Ginalski filed a Complaint in this Court, bringing claims of age and sex discrimination against all Defendants (Count I); retaliation against all Defendants (Count II); disability discrimination against all Defendants (Count III); negligent hiring against Defendants Diocese of Gary, Andrean High School, and Dr. Barbara O'Block (Count IV); negligent infliction of emotional distress against all Defendants (Count V); defamation against Defendants Diocese of Gary, Andrean High School, and Vande Velde (Count VI); and intentional infliction of emotional distress against all Defendants (Count VII).

2

On May 21, 2015, Defendants filed an Answer. Also on May 21, 2015, the Roman Catholic Diocese of Gary, Indiana and Andrean High School filed a Counterclaim, alleging claims of defamation (Count I) and unjust enrichment (Count II). Ginalski did not file an Answer to the Counterclaim.

On August 1, 2016, Defendants filed their Motion for Summary Judgment on all the claims in Ginalski's Complaint. Ginalski filed a response on August 29, 2016, and Defendants filed a reply on September 9, 2016.

Ginalski filed a Motion for Summary Judgment on the Counterclaim on August 1, 2016. The Roman Catholic Diocese of Gary, Indiana and Andrean High School filed a response on August 25, 2016, agreeing to the dismissal of the Counterclaim.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## MATERIAL FACTS

Plaintiff Mary Beth Ginalski was educated in the Catholic school system. She graduated from Calumet College of St. Joseph in 1980 with a communication degree and received a second degree in education in 1982 from the same institution. She earned an Indiana teaching license in 1982 and an Indiana elementary administrator's license in 1995. Ginalski served as a public elementary school principal for seventeen years.

Andrean High School is a Catholic high school in the Roman Catholic Diocese of Gary, Indiana. Barbara O'Block was the Superintendent of Schools for the Diocese of Gary at all relevant times.

In late July 2012, Ginalski was hired as the principal of Andrean High School for the 2012-2013 school year. In late spring 2013, Ginalski was offered, and accepted, the position of principal of Andrean High School for the 2013-2014 school year.

In early 2013, the Diocese of Gary began considering the adoption of the president/principal model of governance for its high schools, and, ultimately, the decision was made to adopt the president/principal model for Andrean High School with the approval of the Bishop. In September 2013, Defendant Harry J. Vande Velde, III was appointed president at Andrean High School and began work.

On March 3, 2014, O'Block informed Ginalski that her contract would not be renewed for the following year. Ginalski's employment was not terminated effective immediately; she was paid through the end of her school year contract. Although Ginalski expressed a desire to remain in the position of principal through the end of the school year, Vande Velde informed her that her last day of work was that same day (March 3, 2014) and asked her to leave the premises.

Ginalski signed a written one-year contract for each of the 2012-2013 and 2013-2014 school years. The contract for the 2013-2014 school year is titled: "Diocese of Gary Catholic Schools Principal Employment Agreement" ("Principal Employment Agreement"). (Defs. Br., Ex. 10).

Section A of the 2013-2014 Principal Employment Agreement is titled "Ministerial Duties/Morals Clauses" and provides:

> 1.      To be Principal in a Catholic school is to accept a ministry. The ministry of the Principal must clearly reflect the Catholic Christian spirit of love, understanding[,] and humility. This ministry is witnessed not only in the manner in which the Principal performs his/her tasks, but also in the example the Principal sets for the teachers and students both in and outside the School and parish, and including everyone associated with the School, parish, and diocese.

2.      Because the Principal's ministry is exercised in the context of the Catholic church, it is hierarchical in nature. Respect for the authority and earnest cooperation with the Parish Pastor, the Superintendent of Schools (hereinafter called "Superintendent") and the Bishop of the Diocese of Gary are essential. Therefore, the Principal understands, accepts, and agrees to maintain at all times, the proper Catholic Christian attitude and spirit of cooperation as an essential element of complying with the terms of this contract. This includes the understanding and agreement that the Superintendent is the representative of the Bishop of the Diocese of Gary and stands in his stead in all parochial and/or diocesan school matters.

3.      Furthermore, in carrying out his/her duties under this agreement, the Principal agrees to faithfully reflect the teachings of the Roman Catholic Church, in mind and in deed, and at all times, both in and out of School, to abide by the official teachings of the church, as interpreted by the Bishop of the Diocese of Gary. Principal understands that every subject taught in the School is embedded in Catholic theology and that part of the Principal's ministry in the School is to apply the theology, doctrine[,] and teachings of the Catholic Church in every aspect of the School and in every duty of a principal. Failure to comply with the terms of the Part A "Ministerial Duties/Morals Clauses" may result in the immediate termination of this contract.

(*Id*. at 1).

In her deposition, Ginalski agreed with the contract provision that "to be a Principal in a Catholic school is to accept a ministry." (Defs. Br., Ex. 2, 135:9-17). She also agreed that "part of [her] role as principal is the role of ministry at Andrean High School." *Id*. at 138:19-22. When asked at her deposition, "[T]he principal is actually considered a minister role on campus?", Ginalski answered, "Absolutely." *Id*. at 140:17-20. Ginalski also agreed in her deposition that part of her job description was to "[c]oordinate the faith community affairs, the theology program, and the integration of faith within the learning process with the chaplain, the campus minister, and the chair of the theology department." (Def. Br., Ex. 2, 139:21-140:9).

In an Affidavit filed with her response brief in opposition to summary judgment, Plaintiff states, in relevant part:

5

5.      Regarding my overall job duties at Andrean, I was an *educator* in a Catholic environment. On a day-to-day basis, most of my job responsibilities were very similar to the 17 years I spent as a principal in a Hobart elementary school. Further, although Andrean was a Catholic high school, we had multiple students who were not Catholic, including Baptist, Lutheran and Jewish students. . . .

6.      While I was Principal at Andrean, two people held ministry titles: a) Father Mick Kopil was chaplain, and his role included presiding over all Masses at Andrean; and b) Stacia Bolakowski was head of Andrean campus ministry, in which she headed the Religion Department and presided over all student religious activities (retreats and student *community service* requirements). . . .

(Pl. Br., Ex. 9, p. 2) (emphasis in original).

The "Feedback Form" for Ginalski for the 2012-2013 school year, dated March 27, 2013, does not evaluate any religious or ministry functions.

## ANALYSIS

### A. Ginalski's Motion for Summary Judgment on the Counterclaim

Ginalski moves for summary judgment on the two claims in the Counterclaim brought by the  Roman Catholic Diocese of Gary, Indiana and Andrean High School. In response, the Counter Claimants agree to the dismissal of the Counterclaim. Accordingly, the Court grants summary judgment in favor of Ginalski on both counts of the Counterclaim—defamation (Count I) and unjust enrichment (Count II). *See Mach v. Will Cty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) (recognizing that a plaintiff may abandon a claim at the summary judgment stage); *Palmer v. Marion Cty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (noting that, by failing to delineate a claim in a brief in opposition to summary judgment to the district court, plaintiff abandons the claim); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 n. 2 (7th Cir. 1996) (finding that the plaintiff abandoned a claim after failing to respond to arguments on that claim in the defendant's motion for summary judgment).

**B. Defendants' Motion for Summary Judgment on Ginalski's Complaint**

*1.      Federal Employment Discrimination Claims*

Defendants argue that Plaintiff Mary Beth Ginalski, as principal of Andrean High School,

a Catholic high school, qualifies as a minister under the ministerial exception grounded in the First

Amendment's Religion Clauses, barring her federal employment discrimination claims. The

ministerial exception is an affirmative defense that Defendants bear the burden of proving. *Hosanna-*

*Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 132 S. Ct. 694, 709 n. 4 (2012). "[W]hether

the exception attaches at all is a pure question of law which this court must determine for itself."

*Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir. 2015); *see also Fratello*

*v. Roman Catholic Archdiocese of New York*, 175 F. Supp. 3d 152, 162-63 (S.D.N.Y. 2016).

In *Hosanna-Tabor*, the Supreme Court held that there is a "ministerial exception," grounded

in the First Amendment, that precludes the application of employment discrimination laws "to

claims concerning the employment relationship between a religious institution and its ministers."

132 S. Ct. at 705-06. The Court reasoned:

> The members of a religious group put their faith in the hands of their ministers.
> Requiring a church to accept or retain an unwanted minister, or punishing a church
> for failing to do so, intrudes upon more than a mere employment decision. Such
> action interferes with the internal governance of the church, depriving the church of
> control over the selection of those who will personify its beliefs. By imposing an
> unwanted minister, the state infringes the Free Exercise Clause, which protects a
> religious group's right to shape its own faith and mission through its appointments.
> According the state the power to determine which individuals will minister to the
> faithful also violates the Establishment Clause, which prohibits government
> involvement in such ecclesiastical decisions.

*Id*. at 706.

The Supreme Court held that the exception "is not limited to the head of a religious

congregation" and declined "to adopt a rigid formula for deciding when an employee qualifies as

7

a minister" for purposes of the exception. *Id*. at 707. Rather, the Court found the following four factors indicated that the plaintiff, who was a "called teacher" at a Lutheran Church and School, qualified as a minister under the facts of that case: (1) the Church held the plaintiff out as a minister; (2) the title reflected a significant degree of religious training; (3) the plaintiff held herself out as a minister; and (4) the plaintiff's job duties included important religious functions. *Id*. at 707-08.

In reversing the appellate decision, the Supreme Court identified three errors that had been committed by the Sixth Circuit Court of Appeals. First, the Court of Appeals erred by finding that the plaintiff's title did not matter. *Id*. at 708. Second, the Court of Appeals gave too much weight to the fact that the lay teachers at the school performed the same religious duties as the plaintiff. *Id*. Third, the Court of Appeals placed too much emphasis on the plaintiff's performance of secular duties. *Id*. at 708-09.

Since the *Hosanna-Tabor* decision in 2012, the Fifth and Sixth Circuit Courts of Appeals and several district courts have considered the application of the ministerial exception in various employment discrimination cases. *See Fratello*, 175 F. Supp. 3d 152, 165, 168 (citing *Conlon*, 777 F.3d at 833-35 (holding that the exception applied to a "spiritual director"); *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 176-79 (5th Cir. 2012) (applying the exception to the parish's music director); *Rogers v. Salvation Army*, No. 14-CV-12656, 2015 WL 2186007, at *6-7 (E.D. Mich. May 11, 2015) (applying the exception to a "spiritual counselor"); *Herx v. Diocese of Fort Wayne-S. Bend Inc.*, 48 F. Supp. 3d 1168, 1177 (N.D. Ind. 2014) (declining to apply the ministerial exception to a "lay teacher"); *Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701, 711 (D. Md. 2013) (finding a member of the janitorial staff of a religious institution not a "minister" under the exception)); *see also Curl v. Beltsville Adventist Sch.*, No. GJH-15-3133, 2016 WL

4382686, at *10 (D. Md. Aug. 15, 2016) (applying the ministerial exception to a teacher whose role in the school included teaching religious music and leading prayer services, despite some secular responsibilities); *Goodman v. Archbishop Curley High Sch., Inc.*, 149 F. Supp. 3d 577, 586 n. 5 (D. Md. 2016) (noting that there was no suggestion in that case that the ministerial exception applied to the plaintiff, a school librarian whose position did not include any religious function); *Herzog v. St. Peter Lutheran Church*, 884 F. Supp. 2d 668 (N.D. Ill. 2012) (applying the ministerial exception to a "called teacher" in a Lutheran school); *Dias v. Archdiocese of Cincinnati*, No. 1:11-CV-251, 2012 WL 1069165, at *5 (S.D. Ohio Mar. 29, 2012) (finding that a computer teacher at a Catholic school was not a minister).

Of those cases, the most persuasive is *Fratello v. Roman Catholic Diocese of New York*, in which the court held that the plaintiff, a Catholic elementary school principal, was a minister for purposes of the ministerial exception. *Id.* at 168. As do most of the cases since *Hosanna-Tabor*, including *Fratello*, this Court considers and weighs the four factors relied upon by the Supreme Court in *Hosanna-Tabor*—whether the church held the plaintiff out as a minister, the title and substance reflected in the title, Ginalski's own use of the title, and any religious functions Ginalski performed—to decide whether the ministerial exception applies in this case. As an initial matter, the parties do not dispute that Andrean High School, a parochial school, is considered a "religious organization" for purposes of the ministerial exception. *See Fratello*, 175 F. Supp. 3d at 165; *Herx*, 48 F. Supp. 3d at 1177; *see also Conlon*, 777 F.3d at 833-34; *Penn v. N.Y. Methodist Hosp.*, No. 11-CV-9137, 2016 WL 270456, at *3, *5 (S.D.N.Y. Jan. 20, 2016) (discussing the application of the ministerial exception in relation to the nature of the employer).

Turning to the *Hosanna-Tabor* factors, first, Andrean High School "held out" Ginalski as a minister "with a role distinct from that of most of its members." *Hosanna-Tabor*, 132 S. Ct. at 707; *see also Fratello*, 175 F. Supp. 3d at 165. Section A of the Principal Employment Agreement provided by Andrean High School and signed by Ginalski and O'Block is titled "Ministerial Duties/Morals Clauses" and begins with the statement: "To be Principal in a Catholic school is to accept a ministry." (Defs. Br., Ex. 10, p. 1). The provision explains:

> The ministry of the Principal must clearly reflect the Catholic Christian spirit of love, understanding and humility. This ministry is witnessed not only in the manner in which the Principal performs his/her tasks, but also in the example the Principal sets for the teachers and students both in and outside the School and parish, and including everyone associated with the School, parish, and diocese.

*Id*.

Further, as Ginalski recognized in her deposition, the description of the principal's job duties required her to "[c]oordinate the faith community affairs, the theology program, and the integration of faith within the learning process with the chaplain, the campus minister, and the chair of the theology department." (Def. Br., Ex. 2, 139:21-140:9); *compare Fratello*, 175 F. Supp. 3d at 165. And, paragraph 2 of the "Ministerial Duties/Morals Clauses" in the Principal Employment Agreement provides that

> in carrying out his/her duties under this agreement, the Principal agrees to faithfully reflect the teachings of the Roman Catholic Church, in mind and in deed, and at all times, both in and out of School, to abide by the official teachings of the church, as interpreted by the Bishop of the Diocese of Gary. *Principal understands that every subject taught in the School is embedded in Catholic theology and that part of the Principal's ministry in the School is to apply the theology, doctrine[,] and teachings of the Catholic Church in every aspect of the School and in every duty of a principal.* Failure to comply with the terms of the Part A "Ministerial Duties/Morals Clauses" may result in the immediate termination of this contract.

10

*Id*. at 1 (emphasis added). This paragraph not only governs Ginalski's personal conduct but also her leadership role in the area of ministry, requiring that she apply Catholic theology, doctrine, and teachings as principal. Ginalski signed the contract acknowledging these duties, and her deposition testimony confirms that she understood the ministerial nature of her role as principal.

The Court recognizes that, unlike in *Hosanna-Tabor* and *Fratello*, Ginalski's evaluation form did not evaluate her effectiveness as a religious leader. *See Hosanna-Tabor*, 132 S. Ct. at 707; *Fratello*, 175 F. Supp. 3d at 166. Nevertheless, the Supreme Court held that "it is impermissible for the government to contradict a church's determination of who can act as its ministers." *Hosanna-Tabor*, 132 S. Ct. at 704. The expectation by Andrean High School that the principal fulfill a ministerial role and Ginalski's admission that she served in a ministerial role weighs heavily in favor of finding the ministerial exception applicable in this case.

Second, unlike in *Hosanna-Tabor*, there is no indication that Ginalski was required to have any formal religious training. *See Hosanna-Tabor*, 132 S. Ct. at 707. Like the principal in *Fratello*, Ginalski's academic credentials and training are in education and administration. *Fratello*, 175 F. Supp. 3d at 166. Also like in *Fratello*, there is nothing inherently religious about Ginalski's title of "Principal" in contrast with titles such as "called teacher" in *Hosanna-Taylor* or "spiritual director" in *Conlon*. *See Hosanna-Tabor*, 132 S. Ct. at 707; *Conlon*, 777 F.3d at 835. The Court finds that this factor weighs against application of the ministerial exception.

Third, the Court considers whether Ginalski held herself out as a minister of the church. *See Hosanna-Tabor*, 132 S. Ct. at 707-08; *Fratello*, 175 F. Supp. at 166. In *Hosanna-Tabor*, the Supreme Court reasoned that the plaintiff held herself out as a minister of the church by accepting the formal call to religious service, by claiming on her taxes a special housing allowance for those

earning their compensation "in the exercise of the ministry," and by describing herself as a minister on a form she submitted to the church Synod following her termination. 132 S. Ct. at 707-08 ("I feel that God is leading me to serve in the teaching ministry . . . . I am anxious to be in the teaching ministry again soon."). Ginalski did not accept a formal "call" like the Lutheran "called teachers" in *Hosanna-Tabor* and *Herzog*. *See Hosanna-Tabor*, 132 S. Ct. at 708; *Herzog*, 884 F. Supp. 2d at 673. However, Ginalski accepted the principal position, which was explicitly described as one of ministry in the Principal Employment Agreement that she signed. Thus, she knew that she was expected to "faithfully reflect the teachings of the Roman Catholic Church, in mind and in deed, at all times, both in and out of School," and she agreed that "part of the Principal's ministry in the School is to apply the theology, doctrine[,] and teachings of the Catholic Church in every aspect of the School and in every duty of a principal." (Defs. Br., Ex. 10). In other words, she accepted that she would be seen as a ministerial leader in this regard. Moreover, in her deposition, Ginalski agreed with the contract provision that "to be a Principal in a Catholic school is to accept a ministry." (Defs. Br., Ex. 2, 135:9-17). She also agreed that "part of [her] role as principal is the role of ministry at Andrean High School." *Id*. at 138:19-22. When asked, "Well, in fact, according to the contract, in the job description the principal is actually considered a minister role on campus?", Ginalski answered, "Absolutely." *Id*. at 140:17-20. Ginalski also agreed in her deposition that part of her job description was to "[c]oordinate the faith community affairs, the theology program, and the integration of faith within the learning process with the chaplain, the campus minister, and the chair of the theology department." (Def. Br., Ex. 2, 139:21-140:9). Like the plaintiff in *Fratello*, by accepting the ministry of being a principal, Ginalski "became the head of an undeniably Catholic institution." 175 F. Supp. 3d at 166.

In response to summary judgment, Ginalski attempts to step back from this sworn deposition testimony by offering her Affidavit to contend that she was an academic leader and that the chaplain served in the "role" as minister. (Pl. Br. 19-20). While it is true that there is no evidence of Ginalski's actual involvement in daily prayer or religious teaching, as addressed in the fourth and final factor below, that fact along with the fact that the school chaplain served in a ministerial role cannot change her earlier acceptance of the Principal Employment Agreement and her deposition testimony. This third factor is neutral in applying the ministerial exception.

Finally, other than the job duty of coordinating the faith community affairs, the theology program, and the integration of faith within the learning process with the chaplain, the campus minister, and the chair of the theology department, there is no evidence before the Court that Ginalski performed religious functions such as leading daily prayers or teaching religion lessons. This is in contrast to both the teacher in *Hosanna-Tabor* and the principal in *Fratello*, who conducted daily prayers. *See Hosanna-Tabor*, 132 S. Ct. at 708; *Fratello*, 175 F. Supp. 3d at 167. As noted by Ginalski, her annual evaluation in Spring 2013 did not address her spiritual leadership. This factor weighs against applying the ministerial exception.

In her response brief, Ginalski first argues that the ministerial exception is inapplicable because her claims arise from discriminatory conduct by another diocesan administrator who is himself arguably a minister under the *Hosanna-Tabor* standard and that her claims "have nothing to do with 'religion' or 'morals'" or "matters involving religion." (Pl. Resp. 17). These arguments are not well taken as the Supreme Court held that the reason behind the employment action—whether or not religious in nature—is not material to the analysis of the ministerial exception. As the Supreme Court explained in *Hosanna-Tabor*, "[t]he purpose of the exception is

13

not to safeguard a church's decision to fire a minister only when it is made for a religious reason. The exception instead ensures that the authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical,'—is the church's alone." *Hosanna-Tabor*, 132 S. Ct. at 709 (internal citation omitted); *see also Herzog*, 884 F. Supp. 2d at 673 (recognizing the ruling in *Hosanna-Tabor* that the "reasons underlying a church's employment decisions are wholly immaterial to determining whether the ministerial exception applies in the first instance).

Ginalski next argues that the Court should follow the decision in *Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 48 F. Supp. 3d 1168, 1176-77 (N.D. Ind. 2014), in which the court found that the plaintiff, who taught junior high language arts, was not a minister within the meaning of the ministerial exception. The court in *Herx* found that the defendant had not shown that the plaintiff's teaching qualifications or job responsibilities in any way compare to those of the plaintiff in *Hosanna-Tabor*. *See Herx*, 48 F. Supp. 3d at 1177. The court noted that the plaintiff was not a member of the clergy, that she had never led planning for a Mass, that she had not been ordained by the Catholic Church, that she did not hold a title with the Catholic Church, that she did not have religious instruction or training to be a teacher, that she never held herself out as a priest or minister, and that she was considered by the principal to be a "lay teacher." *Id*. The court also noted that the religion teachers had different contracts than the non-religion teachers and were required to have religious education and training. *Id*. The court found insufficient the fact that the plaintiff attended and participated in prayer and religious services with her students in a supervisory capacity. *Id*. The court reasoned that to deem the plaintiff a "minister" in the Catholic Church would expand the scope of the ministerial exception too far and would moot the religious exemptions of Title VII and the ADA. *Id*. The same is not true in the instant case, as set forth in this Court's analysis of the

14

*Hosanna-Tabor* factors above. If anything, a finding that Ginalski was *not* a minister within the meaning of the exception would narrow the scope of the exception to only the head of a religious congregation—a proposition the Supreme Court rejected in *Hosanna-Tabor*. 132 S. Ct. at 707.

Finally, Ginalski cites a dictionary definition of "minister" as a person whose job involves leading church services, performing religious ceremonies, and providing spiritual or religious guidance. (Pl. Br. 19 (citing www.merriam-webster.com)). It is irrelevant that Ginalski "is not a member of the clergy and that she would not be considered a minister for purposes of Church governance" because "the issue here is one of U.S., not canon, law, and 'minister' for purposes of the ministerial exception has a far broader meaning than it does for internal church purposes." *Fratello*, 175 F. Supp. 3d at 168; *see also Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 703 (7th Cir. 2003) ("In determining whether an employee is considered a minister for the purposes of applying this exception, we do not look to ordination but instead to the function of the position.").

Having considered all the evidence of record in light of the factors applied by the United States Supreme Court in *Hosanna-Tabor*, the Court finds that the ministerial exception applies to Ginalski's role as principal of Andrean High School. As noted in *Hosanna-Tabor*, a core value of the Free Exercise Clause is to "protect a religious group's right to shape its own faith and mission through its appointments." *Hosanna-Tabor*, 132 S. Ct. at 706. Although Ginalski's title and training and the lack of evidence of involvement in religious activity weigh against applying the ministerial exception, the ministerial role assigned to and accepted by Ginalski as the head of the Catholic high school are sufficient for the Court to apply the ministerial exception in this case. *Hosanna-Tabor*, 132 S. Ct. at 708 (declining to express a view as to whether someone with the plaintiff's same

15

religious duties would be covered by the ministerial exception in the absence of the other factors); *Conlon*, 777 F.3d at 835 (holding that the two factors of plaintiff's formal title and religious function were sufficient to find that the plaintiff was a minister for purposes of the exception); *Ciurleo v. St. Parish*, 2016 WL 5870049, at *4, — F. Supp. 3d —, — (E.D. Mich. Oct. 7, 2016) (acknowledging that the Supreme Court did not opine whether the factor of religious function alone was sufficient to trigger the ministerial exception and finding that it was in that case); *Fratello*, 175 F. Supp. 3d at 168 (finding the two factors of the distinct ministerial role assigned by the church and the plaintiff's job responsibilities sufficient to apply the ministerial exception).

As in *Hosanna-Tabor* and *Fratello*, requiring Andrean High School to reinstate Ginalski as principal or by punishing it for not renewing her contract would violate Andrean High School's freedom under the Religion Clauses to select its own ministers. Thus, because Ginalski was a minister within the meaning of the ministerial exception, Ginalski's federal employment claims must be dismissed.

*2.     State Law Claims*

With the dismissal of Plaintiff's federal claims, the Court considers the status of its supplemental jurisdiction over Ginalski's four state law claims under 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims" when the federal claims are dismissed before trial. *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). A district court should exercise its discretion to relinquish jurisdiction over supplemental state law claims remaining after the dismissal of federal claims

16

subject to three exceptions: "when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008).

In her brief in opposition to the Motion for Summary Judgment, Ginalski explicitly indicates that she is making no response to the motion as to the claims of negligent infliction of emotional distress (Count V) and defamation (Count VI). Because "it is clearly apparent" that Ginalski has conceded that summary judgment be granted on the claims, the Court grants summary judgment in favor of Defendants on Ginalski's claims of negligent infliction of emotional distress (Count V) and defamation (Count VI) in the Complaint. *See Mach*, 580 F.3d at 501; *Palmer*, 327 F.3d at 597-98; *Bombard*, 92 F.3d at 562 n. 2 (7th Cir. 1996).

However, the Court declines to exercise supplemental jurisdiction over the Indiana state law claims of negligent hiring (Count IV) and intentional infliction of emotional distress (Count VII), finding that no exception exists. The Court dismisses these claims without prejudice under 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Ginalski's Motion for Summary Judgment [DE 27] and **DIRECTS** the Clerk of Court to enter judgment in favor of Counter-Defendant Mary Beth Ginalski and against Counter Claimants Roman Catholic Diocese of Gary, Indiana and Andrean High School on Count I (defamation) and Count II (unjust enrichment) in the Counterclaim.

17

The Court further **GRANTS** Defendants' Motion for Summary Judgment [DE 25] on Count I (Title VII and ADEA discrimination), Count II (Title VII retaliation), Count III (ADA disability discrimination), Count V (state law negligent infliction of emotional distress), and Count VI (state law defamation) of the Complaint and **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendants Diocese of Gary, Andrean High School, Harry J. Vande Velde, III, and Dr. Barbara O'Block and against Plaintiff Mary Beth Ginalski on those five claims.

Under 28 U.S.C. § 1367(c)(3), the Court relinquishes its jurisdiction over the state law claims in Count IV (negligent hiring) and Count VII (intentional infliction of emotional distress) and **DISMISSES without prejudice** both claims.

So ORDERED this 5th day of December, 2016.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT